J-A14022-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TYSHEEN REED | : | No. 2133 EDA 2025 |

Appeal from the Order Entered July 9, 2025
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002939-2025

BEFORE: DUBOW, J., NICHOLS, J., and MURRAY, J.

MEMORANDUM BY MURRAY, J.: **FILED JULY 1, 2026**

The Commonwealth of Pennsylvania appeals from the order granting Tysheen Reed's (Defendant) motion to quash the charges filed against him, on the grounds that the Commonwealth failed to present *prima facie* evidence establishing Defendant's identity as the perpetrator of a shooting. After careful review, we reverse and remand for further proceedings.

On April 25, 2024, at approximately 9:25 p.m., an individual standing on the corner of Broad Street and Susquehanna Avenue in Philadelphia fired multiple gunshots at a vehicle passing through the intersection. Police thereafter recovered four 9mm shell casings from the scene. Police also obtained surveillance video of the shooting, wherein the shooter wore all-black clothing. Additional surveillance video from a nearby subway station depicted Defendant, approximately one minute after the shooting, wearing all-black

clothing. On May 13, 2024, in an unrelated encounter, police found Defendant in possession of a 9mm handgun. Ballistic analysis demonstrated that handgun was the same firearm used in the April 25, 2024, shooting.

The Commonwealth subsequently charged Defendant with one count each of aggravated assault – attempt to cause serious bodily injury, aggravated assault – attempt to cause serious bodily injury with a deadly weapon, carrying a firearm without a license, carrying a firearm on public streets in Philadelphia, possessing an instrument of crime, simple assault, and recklessly endangering another person.[1] At a preliminary hearing on April 23, 2025, the Commonwealth presented testimony from Philadelphia Police Detective Thang Nguyen (Detective Nguyen) and Philadelphia Police Officer Olufemi Bello (Officer Bello), along with surveillance video and a ballistics report.[2] At the hearing's conclusion, the municipal court judge held all charges for court.

_____

[1] 18 Pa.C.S.A. §§ 2702(a)(1), (a)(4), 6106(a)(1), 6108, 907(a), 2701(a)(1), 2705. The firearm charges pertain to Defendant's alleged possession of a firearm at the time of the April 25, 2024, shooting. Defendant was charged at a separate docket with his possession of a firearm on May 13, 2024. **See** Motion to Quash, 6/24/25, at 3 n.3.

[2] Defendant stipulated to the ballistics report, which concluded the shell casings recovered from the scene of the April 25, 2024, shooting matched the handgun found in Defendant's possession on May 13, 2024. **See** N.T., 4/23/25, at 33; Exhibit C-4 (ballistics report).

On June 24, 2025, Defendant filed a motion to quash/petition for writ of *habeas corpus* (motion to quash),[3] arguing the Commonwealth had failed to present *prima facie* evidence establishing Defendant's identity as the shooter. Defendant argued the surveillance videos failed to establish that Defendant was the shooter, and his later possession of the handgun was "insufficient to tip the scales … in the Commonwealth's favor" because of the three-week passage of time and the frequency with which handguns change hands. Motion to Quash, 6/24/25, at 5.

On July 9, 2025, the trial court held a hearing on the motion to quash, at which the Commonwealth relied on the testimony and exhibits presented at the preliminary hearing, including the surveillance videos and ballistics report. Following the hearing, the trial court entered an order granting Defendant's motion and quashing all charges.

The Commonwealth timely appealed.[4] The Commonwealth and the trial court have complied with Pa.R.A.P. 1925. The Commonwealth presents the following question for our review:

---

[3] A motion to quash is "the equivalent in Philadelphia practice of a pre-trial [petition for] writ of *habeas corpus*," which is "the proper means for testing whether the Commonwealth has sufficient evidence to establish a *prima facie* case." **Commonwealth v. Dantzler**, 135 A.3d 1109, 1111-12 (Pa. Super. 2016) (*en banc*).

[4] "[A]n order quashing a charge is unquestionably 'final' as to that charge…." **Commonwealth v. Karetny**, 880 A.2d 505, 512 (Pa. 2005); **see also** Pa.R.A.P. 341(a) (stating that "an appeal may be taken as of right from any final order").

Did the [trial] court err in concluding that the Commonwealth failed to establish a *prima facie* case as to [D]efendant's identity[,] when the Commonwealth presented evidence that [D]efendant was present near the scene of the shooting on the date and time in question, was wearing clothing similar to that which was worn by the shooter, and was found in possession of the gun that was used in the shooting less than three weeks after the shooting occurred?

Commonwealth Brief at 5.

Whether the Commonwealth presented sufficient evidence to establish a "*prima facie* case for a charged crime is a question of law as to which an appellate court's review is plenary." **Dantzler**, 135 A.3d at 1112 (quoting **Karetny**, 880 A.2d at 513). "[T]he trial court is afforded no discretion in ascertaining whether, as a matter of law and in light of the facts presented to it, the Commonwealth has carried its pre-trial, *prima facie* burden to make out the elements of a charged crime." **Id.** (quoting **Karenty**, 880 A.2d at 513). Accordingly, "we are not bound by the legal determinations of the trial court." **Id.**[5]

In reviewing an order granting a motion to quash, we are guided by the following principles. To demonstrate that

a *prima facie* case exists, the Commonwealth must produce evidence of every material element of the charged offense(s) as

---

[5] Instantly, in its Rule 1925(a) opinion, the trial court suggested that appellate courts employ an abuse of discretion standard when reviewing orders granting motions to quash. **See** Trial Court Opinion, 9/8/25, at 3-4. However, **Dantzler** recognized that our Supreme Court rejected that standard in favor of plenary review. **Dantzler**, 135 A.3d at 1112 (citing **Karetny**, 880 A.2d at 513).

well as the defendant's complicity therein.[6]  To meet its burden, the Commonwealth may utilize the evidence presented at the preliminary hearing and also may submit additional proof.

*Id.* (citations and quotation marks omitted; footnote added).

The Commonwealth establishes

a *prima facie* case when it produces evidence that, if accepted as true, would warrant the trial judge to allow the case to go to a jury.  The Commonwealth need not prove the elements of the crime beyond a reasonable doubt; rather, the *prima facie* standard requires evidence of the existence of each and every element of the crime charged.  Moreover, the weight and credibility of the evidence are not factors at this stage, and the Commonwealth need only demonstrate sufficient probable cause to believe the person charged has committed the offense.  Inferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect, and the **evidence must be read in the light most favorable to the Commonwealth's case.**

**Commonwealth v. Smith**, 317 A.3d 1053, 1058 (Pa. Super. 2024) (citations and brackets omitted; emphasis in original); **see also Dantzler**, 135 A.3d at 1111 ("We review a decision to grant a pre-trial petition for a writ of *habeas corpus* by examining the evidence and reasonable inferences derived therefrom in a light most favorable to the Commonwealth").

Instantly, the Commonwealth argues the trial court failed to view the evidence in the light most favorable to the Commonwealth and draw

_____

[6] Defendant's motion to quash challenged only his identity as the shooter.  **See generally** Motion to Quash, 6/24/25.  Defendant did not argue that the shooter's conduct did not satisfy the elements of the offenses charged against Defendant.  **Id.**  The trial court's opinion addressed only Defendant's identity as the shooter, and did not mention the specific offenses involved.  **See generally** Trial Court Opinion, 9/8/25.

reasonable inferences in its favor. Commonwealth Brief at 11. The Commonwealth maintains that, viewed under the proper standard, the evidence sufficiently established "at least a *prima facie* case as to [D]efendant's identity as the shooter." *Id.* at 12. The Commonwealth contends the surveillance videos depict Defendant—wearing clothing that matched the shooter's—present in the subway station approximately one minute after the shooting.[7] *Id.* at 14. The Commonwealth contends video timestamps "refute[]" the trial court's determination that the evidence did not establish the time of Defendant's presence in the subway station. *Id.* at 13. The Commonwealth further emphasizes that, less than three weeks later, Defendant was found in possession of the same firearm used in the shooting. *Id.* at 12-13. The Commonwealth asserts that "[t]hese facts, when viewed together in a logical and common-sense manner, permitted a reasonable inference that [D]efendant was indeed the person captured on surveillance video shooting at the moving car." *Id.* at 10.

Defendant counters that the evidence does not support an inference that Defendant was the shooter. Defendant's Brief at 8. Defendant maintains the surveillance videos disclose no identifying features of the shooter's clothing "beyond the fact that it was black." *Id.* Defendant asserts that in addition to himself, "several other people in the [subway surveillance] video, including

_____

[7] Detective Nguyen testified the subway station is located approximately 100 yards from the site of the shooting. *See* N.T., 4/23/25, at 31.

[Defendant's] companion," were dressed in all-black clothing. *Id.* Defendant further asserts that several people in the surveillance videos of the shooting wore all-black clothing. *Id.* Defendant also maintains that, while the video timestamps suggest Defendant was in the subway station one minute after the shooting, "the Commonwealth did nothing to establish the accuracy of these timestamps." *Id.* at 9. Defendant argues that, though Detective Nguyen testified the subway station was located 100 yards from the site of the shooting, the evidence "fails to establish how long it might have taken someone to get from the shooting to the location where [Defendant] was seen on the [subway] video." *Id.* at 10. Finally, Defendant argues that evidence of his possession of the handgun "three weeks later" does "not establish that he possessed" it at the time of the shooting.[8] *Id.* at 11.

In its Rule 1925(a) opinion, the trial court set forth the following analysis:

> In the instant matter, through an independent review of the evidence presented, the trial court determined that contrary to the Commonwealth's assertion, the identity of the shooter in the April 25, 202[4], surveillance footage, is not established as being the Defendant, even at the *prima facie* level.

---

[8] Officer Bello testified that on May 13, 2024, he encountered Defendant among a group of 8-10 juveniles, whereupon Officer Bello saw Defendant pass a fanny pack to a juvenile. N.T., 4/23/25, at 6-9, 15-18. Upon further investigation, Officer Bello discovered the fanny pack contained the handgun later shown to have been used in the April 25, 2024, shooting. *Id.* Defendant argues this testimony "demonstrate[s] the ease with which this firearm may get passed around…." Defendant's Brief at 11.

First, the quality of the footage is very poor. The lighting is low. The image is grainy. The only distinguishing feature of the person shooting is that he or she is dressed in all-black clothing. The trial court does not agree with the preliminary [hearing] court's finding that a white Nike logo is visible on the shooter's clothing.

Second, although the Commonwealth presented a photograph of the Defendant standing on a [subway] platform located within 200 feet of the shooting, the photograph has no probative value[,] as the Commonwealth failed to establish when the video or photograph was taken.[9] The trial court will not draw an inference that the photograph was taken within a relatively short time period from when the shooting occurred[,] as it is just as reasonable to infer that a substantial amount of time has passed.

In addition, the photograph shows another individual standing next to the Defendant on the [subway] platform. This other person is also clad in all-black clothing. Therefore, even if the trial court were to draw the inference that the photograph was taken in close time proximity to the shooting incident, another reasonable inference could be drawn that the other person dressed in all-black was the shooter. As previously explained, the shooter depicted in the poor-quality video had no visible distinguishing marks on his or her all-black clothing.

Finally, although the Defendant was arrested, almost three (3) weeks later, in possession of the firearm used in the April 25, 202[4], shooting, this piece of evidence by itself is not enough to support a finding as to the identity of the shooter being the Defendant, even at the *prima facie* level. ***See Commonwealth v. Terrell***, 339 A.2d 112 (Pa. Super. 1975) (subsequent possession of a firearm is admissible evidence to ***corroborate*** identity [(trial court's emphasis)]). Accordingly, the Commonwealth's challenge is without merit, and no relief is due.

Trial Court Opinion, 9/8/25, at 4-5 (paragraph breaks and footnote added; some capitalization modified).

_____

[9] The photograph is a still taken from Exhibit C-3, the subway surveillance video. ***See*** N.T., 7/9/25, at 7.

Initially, we agree with the Commonwealth. Our review confirms the trial court did not view the evidence in the light most favorable to the Commonwealth, or draw reasonable inferences in the Commonwealth's favor. *See Smith*, 317 A.3d at 1058. The trial court ignored the timestamp on the subway surveillance video and pointedly refused to infer that the video indeed depicted the time period reflected on the timestamp. As discussed further below, the trial court's description of the surveillance footage weighed and minimized its probative value. Additionally, the trial court concluded Defendant's later possession of the handgun used in the shooting did not "by itself" establish his identity as the shooter, apparently without considering that fact in light of the other evidence. *Id.* at 5.

Our review discloses the surveillance videos are more probative than the trial court suggests. We begin by describing Defendant's appearance in the subway surveillance video, which depicts the Susquehanna-Dauphin subway station. *See generally* Exhibit C-3. According to the video's timestamp, Defendant first appears at 9:26:30 p.m. *Id.* at 9:26:30. Defendant is a black male wearing black shoes, black pants, a black hooded jacket/sweatshirt, and a black head covering with a white Nike logo. *Id.* at 9:26:41. Defendant is also wearing white socks, a few inches of which are clearly visible between his black pants and black shoes. *Id.* Additionally, the hood of Defendant's sweatshirt is down, and the inside of the hood is white. *Id.* Defendant may be in the company of multiple other individuals depicted

in the video, including a black male wearing a black hooded jacket/sweatshirt, gray pants, and gray shoes, *id.* at 9:26:29-9:26:42; and a black male wearing a black hooded sweatshirt with a large white "Nike Air" logo on his chest, black pants, and white or gray shoes, *id.* at 9:26:41-9:26:47, 9:27:10-9:27:14.

Two surveillance videos depict the shooting, as well as the several preceding minutes. Exhibit C-1 is timestamped footage from a Real Time Crime Camera located at the intersection of Broad Street and Susquehanna Avenue (the intersection).[10, 11] *See* N.T., 4/23/25, at 22; Exhibit C-1. Exhibit C-2 is surveillance footage from a business located near the intersection, on the southern side of Susquehanna Avenue; the camera faces northeast toward the intersection. *See* N.T., 4/23/25, at 23; Exhibit C-2. Our review of the videos, viewed in the light most favorable to the Commonwealth, discloses the following.

Approximately four-and-a-half minutes before the shooting, an individual whose appearance is consistent with Defendant can be seen on the northwest corner of the intersection. Exhibit C-2 at 1:10-2:00. This individual

---

[10] "Real Time Crime Cameras are video surveillance cameras owned by the City of Philadelphia and installed throughout the city." *Commonwealth v. Hightower*, 346 A.3d 343 (Pa. Super. filed Aug. 12, 2025) (unpublished memorandum at 2 n.1); *see also* Pa.R.A.P. 126(b) (unpublished non-precedential decisions of this Court filed after May 1, 2019, may be cited for persuasive value).

[11] This camera rotates every ten or eleven seconds, capturing a 360-degree spectrum from seven different angles; however, it captures only one angle at a time. *See* Exhibit C-1.

has dark skin and is wearing a black shirt, black pants, black shoes, and white socks. *Id.* White is also visible around the individual's shoulders, consistent with the white inside of Defendant's hood. *Id.* Further, the individual is wearing a black head covering, which bears a white mark consistent with the white Nike logo on Defendant's head covering. *Id.* The individual peers west down Susquehanna Avenue, and is apparently in the company of an individual wearing black pants and a red hooded sweatshirt. *Id.* Approximately four minutes before the shooting, the individual who resembles Defendant walks west on Susquehanna Avenue, out of the frame of Exhibit C-2, followed by the red-shirted individual. *Id.* at 1:50-2:00.

About twenty seconds later, four individuals run through the frame of Exhibit C-2 from west to southeast, including what appears to be the same individual who resembles Defendant and the red-shirted individual. *Id.* at 2:20-2:23. The group proceeds towards Broad Street in a southerly direction. *Id.* Several seconds later, another individual—wearing black and carrying a large red bag—runs in the same direction as the group. *Id.* at 2:29.

Approximately two minutes later (about one minute before the shooting), Exhibit C-1 shows the same five individuals walking north on Broad Street, returning to the intersection. Exhibit C-1 at 21:24:36-21:24:46. On Exhibit C-2, the same group can be seen crossing the intersection from the southeast corner to the northwest corner. Exhibit C-2 at 5:02-5:09. In both videos, the group includes the individual resembling Defendant, whose white

socks, white inside of his hood, and white mark on his head covering remain visible amidst his otherwise all-black attire. *Id.*; Exhibit C-1 at 21:24:36-21:24:46. About thirty seconds before the shooting, this individual joins a crowd of multiple people standing on the northwest corner of the intersection. Exhibit C-2 at 5:02-5:09.

In the seconds before the shooting, most of the crowd standing on the northwest corner scatters. *Id.* at 5:36-5:40; Exhibit C-1 at 21:25:35-40. Left standing alone is the shooter. Exhibit C-2 at 5:36-5:40; Exhibit C-1 at 21:25:35-40. Though the video images are somewhat grainy and, on Exhibit C-2, partially obscured by tree branches, the shooter appears to be wearing all-black clothing, except for his white socks, which are clearly visible. Exhibit C-2 at 5:36-5:42; Exhibit C-1 at 21:25:41-21:24:42. The shooter's appearance is consistent with that of Defendant,[12] and he is standing precisely where the previously-described individual resembling Defendant could last be discerned upon his joining the crowd standing on the northwest corner. Exhibit C-2 at 5:02-5:09, 5:36-5:40; Exhibit C-1 at 21:25:36-21:25:42.

_____

[12] Given the shooter's white socks, we disagree with the trial court's statement that "[t]he only distinguishing feature of the person shooting is that he or she is dressed in all-black clothing." Trial Court Opinion, 9/8/25, at 4. We further disagree with the trial court that the shooter's appearance is equally consistent with another individual seen accompanying Defendant in the subway surveillance video. *See id.* at 4-5. None of the individuals accompanying Defendant in the subway video have the shooter's black pants/white socks/black shoes attire. *See* Exhibit C-3 at 9:26:29-9:26:47, 9:27:10-9:27:14.

As the crowd scatters, a dark sedan traveling north on Broad Street turns west onto Susquehanna Avenue. Exhibit C-2 at 5:36-5:40; Exhibit C-1 at 21:25:38-21:25:42. The sedan's front passenger door is open and an individual is hanging outside of the sedan, apparently holding on somewhere near the passenger seat.[13] **Id.** As the sedan veers onto Susquehanna, the shooter lifts his right arm and lunges in the sedan's direction,[14] firing multiple gunshots towards it. **Id.**; Exhibit C-2 at 5:41-5:42.

After firing the shots, the shooter immediately turns and runs north on Broad Street **in the direction of the Susquehanna-Dauphin subway station**. Exhibit C-2 at 5:42-5:45. According to the video timestamps, Defendant appears on the subway surveillance video approximately 48 seconds after the shooting. **Compare** Exhibit C-1 at 21:25:42 **with** Exhibit C-3 at 9:26:30; **see also** N.T., 4/23/25, at 31 (Detective Nguyen's testimony that the subway station is located approximately 100 yards from the site of the shooting).

We reiterate that less than three weeks later, on May 13, 2024, police found Defendant in possession of the same 9mm handgun used in the April 25, 2024, shooting. **See** N.T., 4/23/25, at 6-9, 15-18, 33; Exhibit C-4.

_____

[13] The record does not reveal any identifying information for the sedan or its occupants.

[14] As the shooter raises his arm and lunges in the sedan's direction, the Exhibit C-1 camera rotates its angle, and therefore misses the actual shooting by fractions of a second. Exhibit C-1 at 21:25:42.

Viewing the foregoing evidence *in the light most favorable to the Commonwealth*, it is reasonable to infer that Defendant was indeed the shooter. Accordingly, we conclude the Commonwealth met its burden to present *prima facie* evidence of the charged offenses. **See Smith**, 317 A.3d at 1058. We therefore reverse the trial court's order granting Defendant's motion to quash, and remand for further proceedings.

Order reversed. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/1/2026